THE STATE OF OHIO, APPELLEE, *v.* AMMAN, APPELLANT.

(No. 6651—Decided May 29, 1946.)

*Mr. John D. Ellis,* city solicitor, *Mr. Robert J. Paul,* city prosecutor, and *Mr. Ralph E. Cors,* for appellee.

*Mr. John W. Driskill,* for appellant.

DOYLE, J. Jacob Amman was convicted in the Municipal Court of Cincinnati of violating Section 13059, General Code. Appeal is prosecuted direct to this court on questions of law.

The charge upon which he was tried, alleged that he did "unlawfully and purposely, then and there, accept a wager for money, on the speed and endurance of a beast, to wit: $2 to win and $1 to place on a certain race horse, to wit: 'Brass Man,' entered and scheduled to run in the 4th race at Rockingham race track, Salem, N. H., on October 15, 1945."

It is argued that this section of the Code has no application to the offense charged, and that the acts of which complaint is made are covered only by another section of the Code—to wit, Section 13062, General Code.

■ The accused contends that Section 13059, General Code, "is not a general statute, and that, even if some latitude of construction should be allowed a trial court relative to General Code 13059, the statute, at most, could only be construed to mean to make the act of playing a game not elsewhere specifically described, or making a wager not elsewhere specifically described, an act punishable as a crime. In other words, existence of a statute specifically describing an offense would preclude construction of General Code 13059 to include such specifically described acts."

Section 13059, General Code, provides:

"Whoever plays a game for money or other thing of value or makes a wager for money or other thing of value, shall be fined not more than one hundred dollars or imprisoned not less than ten days nor more than six months, or both."

Section 13062, General Code, provides:

"Whoever keeps a room or building, or portion thereof, or occupies public or private grounds with apparatus, books or other device for recording wagers or selling pools, or records wagers or sells pools upon the result of a trial or contest of skill, speed or power of endurance of man or beast, or, being the owner, lessee or occupant of such room, building or portion thereof, knowingly permits it to be so used or occupied, or keeps, exhibits or employs therein a device or apparatus for recording such wagers, or for selling such pools, or becomes the custodian or depositary for hire or reward of money, property or other thing of value so staked, wagered or pledged, shall be fined not less than five dollars nor more than five hundred dollars or imprisoned in jail not less than ten days nor more than six months, or both."

Inspection of the latter statute will reveal that it specifically makes unlawful the offense charged in the

affidavit, and the courts have so ruled. See: *State* v. *Pearlman,* 136 Ohio St., 36, 23 N. E. (2d), 499, and *In re Sulzmann, Sheriff,* 125 Ohio St., 594, 183 N. E., 531. The prosecution in the case under consideration could have been brought under this statute.

Is it a fatal error to bring it under the former (Section 13059, General Code)?

This section makes it unlawful to make a wager for money or other thing of value.

What is a wager? Judge Spear, in *Stevens* v. *Cincinnati Times-Star Co.,* 72 Ohio St., 112, 73 N. E., 1058, 106 Am. St. Rep., 586, has cited with approval (at pp. 148-149) Bouvier's definition: "Wager is: 'a bet; a contract by which two parties or more agree that a certain sum of money, or other thing, shall be paid or delivered to one of them on the happening, or not happening of an uncertain event. * * * A wager is something hazarded on the issue of some uncertain event; a bet is a wager, although a wager is not necessarily a bet.' "

Under this definition of the word, if A gives B money under an agreement that A will forfeit or lose the money to B in the event that a certain horse loses a race, but will, if the horse wins, not only get his money back but also receive an additional amount, both A and B are engaged in making a wager. And it is of no importance that B is acting in the capacity of a "bookmaker" and telephones the agreement or sends the money wagered and the agreement on to a principal with whom he is associated.

It is of no consequence that the two Ohio statutes may cover the same set of facts. They are not inconsistent with each other, nor are they ambiguous, and both are in full force and effect.

It is sometimes said that, under proper conditions and with important limitations, the express mention of

a person, thing or consequence in a statute is tantamount to an express exclusion of all others. (The student of Latin will recognize the maxim *"expressio unius est exclusio alterius."*) However, this rule is useful only as a guide in determining the probable intention of the Legislature. Stated in other language, the special mention of one thing or circumstance sometimes indicates that it was not intended to be covered by a general provision which would otherwise include it. Our problem deals with two separate statutes, and in interpreting them we reach the conclusion that it was not the intention of the Legislature, when it enacted or amended Section 13062, General Code, to limit in any way the general application of Section 13059, General Code. If there had been such an intention, a few simple words could have expressed it. Courts do not favor the repeal of a statute nor the curtailment of its scope by implication. Nor will courts establish Procrustean standards, to which all statutory language must be made to conform.

Of course, a different situation would be presented if prosecution under the statutes were directed toward a gambler operating under the authority of the state law (Section 1079-8, General Code), because "No criminal prosecution can be sustained in Ohio except for an act done in violation of a statute or ordinance legally passed; and the courts will not construe that to be a crime punishable under one statute which was done under authority especially granted by another statute." *Toledo Disposal Co. v. State,* 89 Ohio St., 230, 106 N. E., 6, L. R. A. 1915B, 1207.

■ It is contended that there is no evidence that a horse called "Brass Man" ran a race at a track called "Rockingham"; and that "If such a race did not take place and if such a horse did not run, the essential elements of 'chance' and 'prize' are not proved by any evidence."

On this question: (a) The offense which the statute designs to punish is the act of wagering and not the winning or losing of money. The wager is complete when the contract is made, and whether or not the scheduled event which is its subject takes place, does not make the contract or agreement any less a wager. (b) There is some evidence in the record of the existence of a so-called "Racing Form," which scheduled entries of horses, including the horse in question, which were to be run at Rockingham track on that day. The "Form" was a part of the equipment in the defendant's place of business, and was there examined by the bettor. But if, under the statute, it was necessary to prove that "Brass Man," a horse, was actually scheduled to run a race at a track called "Rockingham," that fact, in the absence of evidence to the contrary, was sufficiently established by the evidence of the bettor, who testified that he gave his money to "win and place" on such a horse at the indicated track to the defendant, that the defendant accepted it and thereby completed a contract of wager on that horse at that track.

The evidence shows that the bettor, a policeman, after stating his bet to the accused, handed him a ten-dollar bill, and the accused "counted out" seven dollars in change and placed the money on the bar. Thereupon the officer identified himself as a policeman and informed the accused that he was under arrest. The astonished accused thereupon attempted to dispose of the ten-dollar bill and fled from the premises.

It is claimed that these circumstances establish the abandonment of a plan to commit a crime, on the theory that a crime had not yet been completed. Defense counsel states: "There is in every design or plan to commit a crime a place of legal repentance or *locus penitentiae*, whereby the one planning to commit may

abandon the idea and thus avoid criminal liability. This is true where one of the persons who has entered into a conspiracy, necessarily involving an overt act, abandons the plan before the act is done.''

The weakness of this argument is that the offense of wagering was committed and the contract thereof was made when the money was accepted, as heretofore stated in this opinion, and the theory of abandonment is untenable after an offense is committed. The evidence shown above indicates rather ''flight'' after the commission of the crime. Reference is made to 12 Ohio Jurisprudence, Criminal Law, Section 313, and cases therein cited, as bearing upon the legal significance of ''flight.''

■ If those charged with the duty to pass judgment on the facts (in this case a jury, and the trial judge later on the motion for a new trial) might not unreasonably say that the accused made a wager for money with another, the members of this court are not at liberty to substitute their judgment for the judgment of those empowered by law to determine the facts.

A different question would be presented if we could say as a matter of law that there was no evidence to justify the conviction, or that the judgment was manifestly against the weight of the evidence. We cannot say that here.

Directing attention specifically to each and every error claimed, we find none of a prejudicial nature.

The judgment is affirmed.

*Judgment affirmed.*

SKEEL, P. J., and MORGAN, J., of the Eighth Appellate District, and DOYLE, J., of the Ninth Appellate District, sitting by designation in the First Appellate District.